### George E. STANCIL

### v.

**William L. MASSEY, Deputy Commissioner, United States Department of Labor, Edgar G. Lail, t/a L & L Painting Co., Reliance Insurance Company, Appellants.**

### No. 23205.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 22, 1970.

Decided Nov. 3, 1970.

☞1279

———◆———

Mr. Philip J. Lesser, Washington, D. C., with whom Messrs. Gerald Herz and I. Irwin Bolotin, Washington, D. C., were on the brief, for appellants.

Mr. Joseph H. Koonz, Jr., Washington, D. C., with whom Messrs. Lee C. Ashcraft and Martin E. Gerel, Washington, D. C., were on the brief, for appellee, Stancil.

Messrs. Morton Hollander and Leonard Schaitman, Attys., Department of Justice, entered appearances for appellee, Massey.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and DAVIS,* Judge, United States Court of Claims.

DAVIS, Judge:

In January 1959 appellee George E. Stancil sustained an accidental injury to his back arising out of and in the course of his employment with appellant Edgar G. Lail. The other appellant, Reliance Insurance Company, which was Lail's workmen's compensation carrier, voluntarily made disability payments to Stancil for the period from January 16, 1959 to June 1, 1959. The last payment of compensation was made on June 10, 1959.

Shortly after the accident the employee was examined by a physician designated and paid by the carrier, and his condition was diagnosed as a mild back strain. He was treated for this condition until May 1959 when he was discharged and informed that he had no further disability.[1] However, recurrent back pains forced him to seek treatment in 1961 and again in 1962. He was admitted to a hospital in 1962 for new treatment, and surgery performed in December of that year revealed that he was suffering from herniated or ruptured discs caused by the 1959 accident. That was the first time that either the doctor or the patient realized the character of the harm done by the accident.[2]

---

* Sitting by designation pursuant to Title 28, U.S.Code, Section 293(a).

1. At the compensation hearing, the doctor, an orthopedist, testified that when he first saw Stancil he thought his patient "had a mild lumbosacral strain with a severe functional overlay" (J.A. 43), that when Stancil was discharged at the end of May the diagnosis was the same (with a change from "mild" to "moderate" strain) (J.A. 44), that at that time the doctor "didn't think that he had any residual disability" (J.A. 45), that the doctor *probably so told Stancil and indicated that no further treatment was necessary* (J.A. 45), and that the final written diagnosis at that time was that the patient was discharged without disability (J.A. 45).

2. The orthopedist testified at the administrative hearing that, after the operation,

On June 20, 1963, about six months after the operation, Stancil filed a claim for compensation under the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 901 et seq. (1964)). The Deputy Commissioner denied the claim on the ground that it was not timely filed. The employee then instituted this action in the District Court in which Lail and Reliance unsuccessfully sought summary judgment. The court set aside the Deputy Commissioner's order and directed him to enter a compensation award in Stancil's favor, which he did. Lail and Reliance then renewed their motions for summary judgment which were again denied, and they suffered final judgment against them from which they appeal.

Section 13 of the Act (33 U.S.C. § 913 (1964)) requires a claim for compensation to be filed within one year after the "injury," or within one year after the last voluntary payment of compensation.[3] Here the claim was not filed until more than four years after payments ceased. Therefore to be timely Stancil's claim must have been filed within one year of the injury. We are thus asked to construe the legislative term "injury" for the purpose of determining the commencement point for the limitation period in the Act.

The hallmark of this statute is hospitality to the claimant. The Supreme Court has said that the Act is to be liberally construed in accord with its purpose in a way which avoids harsh and incongruous results. Voris v. Eikel, 346 U.S. 328, 333, 74 S.Ct. 88, 98 L.Ed. 5 (1958); Reed v. S.S. Yaka, 373 U.S. 410, 415, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). This court has also stated that the Act is to be construed with a view to its beneficent purposes and that doubts are to be resolved in favor of the employee. Friend v. Britton, 95 U.S.App. D.C. 139, 220 F.2d 820, cert. denied sub nom. Harry Alexander, Inc. v. Friend, 350 U.S. 836, 76 S.Ct. 72, 100 L.Ed. 745 (1955).

With this approach, the precise words of the Act take on special significance. Congress used "injury", in the limitations clause, not "accident" or "disability". These terms are not synonymous. "Accident" refers to the event causing the harm, "injury" to the harmful physical (in some instances, psychological) consequences of that event which need not occur or become obvious simultaneously with the event.[4] The legislative history suggests that Congress was aware of the distinction. The provisions of the bill which became § 13 were amended so as to reduce the period for filing claims from two years to one year and to substitute "injury" for "accident" as the starting point. See Pillsbury v. United Eng'r Co., 342 U.S. 197, 203 n. 5, 72 S.Ct. 223, 96 L.Ed. 225 (1952) (Burton, J., dissenting). A reasonable inference is that in shortening the period for filing claims Congress also intended to create a more flexible measuring point from which the shortened

---

"I had to revise my diagnosis, because obviously the correct diagnosis was a herniated, ruptured disc at the L4–5 level, and a mild herniated disc at the L5–S1 level on the left", "that what we had thought was an acute lumbosacral strain, in my opinion, was incorrect and was really an intermittent manifestation of a protruded disc * * *" (J.A. 49), and that the accident of January 15, 1959 caused the initial herniation (J.A. 50).

3. Section 13(a) provides in relevant part: "The right to compensation for disability under this chapter shall be barred unless a claim therefor is filed within one year after the injury, and the right to compensation for death shall be barred unless a claim therefor is filed within one year after the death, except that if payment of compensation has been made without an award on account of such injury or death a claim may be filed within one year after the date of the last payment. Such claim shall be filed with the deputy commissioner in the compensation district in which such injury or such death occurred."

4. "Disability" in this Act is a medico-economic term, meaning actual incapacity because of injury to earn the wages which the claimant was receiving. See Pillsbury v. United Engineering Co., 342 U.S. 197, 198, 72 S.Ct. 223, 96 L.Ed. 225 (1952), and the discussion infra.

period was to run. Thus, the history and the dictionary both teach that "injury" is not to be tied to the fixed point of the "accident" (or equated with "disability"). We think that the canon of liberal construction then instructs that "injury" should encompass physical harm of a kind which is unknown to the employee at the time of the accident but which is later revealed, such as an occupational disease or a latent wound. The general theory of the limitations provision is, as we understand it, that the workman should not dawdle too much in filing a claim once he knows (or should know) that there is something wrong with him of a nature which will potentially affect his ability to earn his pre-existing wage (whether or not it has already had that effect). Conversely, there is no intimation that Congress, contrary to its humanitarian aim, wished to penalize the employee who reasonably does not know that he has suffered harm which will, or may well, reduce his earning capacity. In short, once the man has been put on the alert (*i. e.*, once he knows or has reason to know) as to the likely impairment of his earning power, there is an "injury"; before that time, while there may have been an accident, there is as yet no "injury" for claim or filing purposes under this statute.

This reading accords with the great majority of decisions under similarly worded state compensation statutes. These cases have held claims to have been timely filed, in comparable circumstances, although the period of limitations, if computed from the date of the accident, would have run.[5] Such a construction would also be consistent with decisions in the latent-injury field generally. Most limitation-spans in tort run from the time of accrual of a cause of action—from the time when all the elements of the tort as required by the substantive law have occurred, and the victim has a right of recovery. Despite the existence of such a right, courts have delayed the commencement of the applicable period until the occurrence of some event without which suit would be impossible or unlikely. Developments in the Law: Statutes of Limitations, 63 Harv.L.Rev. 1177, 1200 (1950). For example, where the injury suffered is undisclosed to or unknown by the victim, the point of beginning may be postponed until the victim is or should be aware of the injury.[6] The rationale is that it is unfair to bar the victim's recovery when he has not had a reasonable opportunity to file his action because he did not know his true injury. This is the principle already adopted, by judicial

---

5. *See, e. g.* Martin v. Industrial Comm'n, 88 Ariz. 14, 352 P.2d 352 (1960); T. J. Moss Tie & Trucking Co. v. Martin, 220 Ark. 265, 247 S.W.2d 198 (1952); Pacific Indem. Co. v. Industrial Accident Comm'n, 34 Cal.2d 726, 214 P.2d 530 (1950); Esposito v. Marlin-Rockwell Corp., 96 Conn. 414, 114 A. 92 (1921); International Detrola Corp. v. Hoffman, 224 Ind. 613, 70 N.E.2d 844 (1947); Guderian v. Sterling Sugar & Ry., 151 La. 59, 91 So. 546 (1922); Hustus' case, 123 Me. 428, 123 A. 514 (1924); Clausen v. Minnesota Steel Co., 186 Minn. 80, 242 N.W. 397 (1932); Wheeler v. Missouri Pac. R. R., 328 Mo. 888, 42 S.W.2d 579 (1931); Crites v. Missouri Dry Dock & Repair Co., 348 S.W.2d 621 (Mo.App. 1961); Johansen v. Union Stockyards Co., 99 Neb. 328, 156 N.W. 511 (1916); Welke v. City of Ainsworth, 179 Neb. 496, 138 N.W.2d 808 (1965); Harlow v. Hare, 51 N.M. 326, 184 P.2d 300 (1947); Provencher v. Glas-Kraft, Inc., 264 A.2d 916 (R.I.1970); Duplan Corp. v. Wilson, 210 Tenn. 315, 358 S.W.2d 322 (1962); Stolp v. Department of Labor, 138 Wash. 685, 245 P. 20 (1926); Acme Body Works v. Koepsel, 204 Wis. 493, 234 N.W. 756 (1931). *Contra,* Cooke v. Holland Furnace Co., 200 Mich. 192, 166 N.W. 1013 (1918); Bjorseth v. North Dakota Workmen's Compensation Bureau, 62 N.D. 623, 244 N.W. 515 (1932).

6. *See, e. g.* R. J. Reynolds Tobacco Co. v. Hudson, 314 F.2d 776 (5th Cir. 1963); Hungerford v. United States, 307 F.2d 99 (9th Cir. 1962); Young v. Clinchfield R. R., 288 F.2d 499 (4th Cir. 1961); Brush Beryllium Co. v. Meckley, 284 F.2d 797 (6th Cir. 1960); Billings v. Sisters of Mercy, 86 Idaho 485, 389 P.2d 224 (1964); Potter v. Midland Cooperatives, Inc., 248 Minn. 380, 80 N.W.2d 59 (1956); Flanagan v. Mount Eden Gen. Hosp., 24 N.Y.2d 427, 301 N.Y.S.2d 23, 248 N.E.2d 871 (1969).

construction, for the commencement of limitations under the Federal Employers' Liability Act. Urie v. Thompson, 337 U.S. 163, 168–171, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); Coots v. Southern Pacific R. R., 49 Cal.2d 805, 322 P.2d 460 (1958). It also has been the rule, judicially developed, for occupational diseases under the Longshoremen's and Harbor Workers' Compensation Act. See Aerojet-General Shipyards, Inc. v. O'Keeffe, 413 F.2d 793, 795–796 (5th Cir. 1969). We know of no reason why the treatment of latent wounds under that Act should be different.

On the record, this case fits into the class of unknown harms. When appellee was discharged from treatment in May 1959, he was told in effect that the injury he had suffered would not further affect his capacity to earn a livelihood beyond the weeks he had already taken off (and for which he has been paid compensation under the Act). See note 1, supra.[7] He believed, and from what the doctor told him he had a right to, that the pain from the "strain" would gradually decrease and eventually go away. When the pain continued, he still had the right to feel, on the basis of this medical advice, that it "would go away" (J.A. 77), hopefully in the near future. When he again sought medical help in 1961 and 1962, nothing in the record indicates that he was warned (until the disc operation) that the situation was different or more serious or that the pain might not "go away". The orthopedist candidly agreed, from the witness-stand, that it was a "fair statement" to

say that the claimant was "perhaps * * * misled in his condition, that is, in his own interpretation, or his own feelings about his condition" by what he had been told and the course of treatment (J.A. 50). See, also, note 2, supra.

We have, then, a case in which, up to December 1962, the employee reasonably believed, on the basis of advice from the carrier's doctor, that he had simply suffered a back strain, that after May 1959 he had no further physical disability, and that his recurrent pain was connected with that strain and would disappear without lasting effect. On that basis, he had no reason to file a compensation claim under the Act. In his eyes, he had, in the statutory words, no "injury" for which he could file a claim, until the diagnosis of herniated discs in December 1962.[8]

In making this determination, we are not invading the province of the Deputy Commissioner as to fact-finding. He did not make any contrary findings. As we read his first order (denying compensation) it rested wholly on his legal interpretation of § 13 of the Act, not on a determination that the employee had been earlier alerted to the potential gravity of his condition. Nor is there occasion to remand to the administrator for further findings. The facts we have recited are undisputed in the record. No other factual conclusion could be reached than that appellee was reasonably unaware, until December 1962, that he was in fact disabled.

We are not holding that the running of limitations was deferred simply

---

7. Stancil, described by the doctor as a very anxious type, was told to get light work if he could, because he would be less apt to injure his back, but the orthopedist's testimony is clear that he did not then regard Stancil as having any further disability stemming from the accident of January 1959. His records carried Stancil as without disability. See note 1, supra.

8. Appellants counter that Stancil, because of the continued pain and his ability to do only light work, must have known previously, despite what the doctor said,

that something was wrong and that his capacity to work had been reduced. This argument disregards the cardinal element that appellee had a right to rely on the advice of the carrier's doctor that he was not physically disabled and that the pain would diminish, presumably shortly. Workmen should not be required to overrule conclusions of the employer-designated medical experts, and to insist that the doctors are wrong. Cf. Aerojet-General Shipyards, Inc. v. O'Keeffe, supra, 413 F.2d 793, 795–796 (5th Cir. 1969).

because a "wrong diagnosis" was made prior to the end of 1962. The issue is not the correctness of the diagnosis *per se.* The question is whether the employee reasonably believed that he was not physically disabled, *i. e.* he had not suffered a work-related harm which would probably diminish his capacity to earn his living. In some instances, a wrong diagnosis will have no bearing on that inquiry since even the incorrect evaluation should have warned the employee. This happens to be a case in which the wrong diagnosis had the opposite effect of lulling the workman into quiescence. Again, we are not dealing simply with an injury producing more serious consequences than at first anticipated. That, too, is not the precise issue. We hold for the employee, not because his injury turned out to be a herniated disc rather than a strain, but because all the time it was thought to be a strain the claimant had the best of reasons (the advice of the carrier's doctor) for considering himself not in fact reduced in working power.

Appellants contend, however, that the Supreme Court's decision in Pillsbury v. United Eng'r Co., *supra,* 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225, requires us to reach a contrary result. That case is not opposed to our holding. The Court in *Pillsbury* was not asked to construe the term "injury" for latent injury cases. Rather, it was asked to decide whether the period of limitations in § 13 of the Act ran from the time of injury or the time of disability. Disability under the Act is a hybrid concept with both medical and economic components. It is such incapacity caused by injury which makes an employee actually (not merely potentially) unable to earn the wages he was receiving at the time of his injury. Longshoremen's and Harbor Workers' Compensation Act, § 2(10), 33 U.S.C. § 902(10) (1964); see note 4, *supra.* There was no latent, undisclosed, or unknown injury involved in *Pillsbury.* Each of those claimants suffered a clear physical injury, which did diminish their general capacity to earn money, but they were not technically "disabled" under the Act in the year after the injury because the particular employers continued to pay them full wages during that time despite their injuries. There was no suggestion that the men were unaware, from the beginning, of the full character, extent, and impact of the physical harm done to them. See the details set forth in the Ninth Circuit's opinion, 187 F.2d 987, 988–989, as well as in the District Court's opinion, 92 F.Supp. 898, 900–901. The Supreme Court held that claims for compensation filed more than one year from the time of injury were barred, although they were filed within one year after "disability" (in the statutory sense) occurred.[9] The Court was not faced with our question of what the "injury" is which triggers the period of limitations. Indeed, the Court explicitly disclaimed any intention of deciding that question by noting that each of the claimants was immediately aware of his injury and by excluding latent injury cases from the purview of its decision. 342 U.S. at 199, 72 S.Ct. 223. The Ninth Circuit, whose decision was upheld, likewise put aside "a latent or undiscovered injury." 187 F.2d at 989 n. 1.[10]

Affirmed.

WILBUR K. MILLER, Senior Circuit Judge, dissents.

9. The "disability" apparently came about when the employees had to leave work or began to receive less than full wages.

10. At least two lower court rulings under the Act have reached the same result as we have, in cases not involving an occupational disease. Di Giorgio Fruit Corp. v. Norton, 93 F.2d 119 (3d Cir. 1937), cert. denied, 302 U.S. 767, 58 S.Ct. 480, 82 L.Ed. 596 (1938); Kropp v. Parker, 8 F.Supp. 290 (D.Md.1934). For the reasons given in the text, *supra,* we do not think these pre-*Pillsbury* decisions have been disturbed by that opinion.