**J.M. MARTINAC SHIPBUILDING; Insurance Company of North America, Petitioners–Appellants,**

v.

**DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS; Darryl G. Grage, Respondents–Appellees.**

**No. 88–7279.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 1, 1989.

Decided April 2, 1990.

---

James R. Walsh, Lynnwood, Wash., for petitioners-appellants.

Joshua T. Gillelan, II, U.S. Dept. of Labor, Washington, D.C. for respondent-appellee Office of Workers' Compensation Programs.

Terry James Barnett, Seattle, Wash., for respondent-appellee Darryl G. Grage.

Before BROWNING, SCHROEDER and FLETCHER, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an appeal by an employer, J.M. Martinac, and an insurer, Insurance Company of North America ("INA"), from a decision of the Benefits Review Board awarding benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901 *et seq.* The Benefits Review Board upheld the Administrative Law Judge's determination that Darryl G. Grage was entitled to compensation despite the untimely filing of his benefits claim, because the employer was estopped from raising a time bar defense.

The issues raised on appeal are: (1) whether Martinac was bound by the health care provider's inaccurate representation of the LHWCA's statute of limitations period and was, therefore, estopped from raising a time bar defense against its employee Grage and (2) if not, whether the LHWCA's statute of limitations period did not begin to run until the claimant knew or should have known that he was permanently disabled. We affirm the Benefits Review Board's compensation award but not on the ground upon which it relied. We hold that the employer was not bound by the health care provider's inaccurate legal information and could raise a time bar defense. However, we also hold that Grage's benefit claim was not time barred because the LHWCA's statute of limitations period did not begin to run until Grage discovered

or should have discovered that his disability was permanent.

The material underlying facts are undisputed. The claimant, Darryl G. Grage, injured his back on August 28, 1981 while working for Martinac. His supervisor immediately took him to Western Clinic ("the Clinic"), where a Dr. Crowell treated him. Dr. Crowell diagnosed a severe back strain, advised Grage that it would take two to three years for his back to heal completely, and released him for work on September 21, 1981.

Martinac routinely sent injured employees to Western Clinic, and Martinac's insurer, INA, routinely communicated directly with the Clinic to obtain information about the physical condition of employees who had been treated there. Following such a request from INA, the Clinic sent Grage a letter which read in part as follows:

> We have a request from INA (employer's insurance company) for a progress report on your back
>
> . . . .
>
> Are you having any further problems with your back at this time? If not, we will notify them that the claim can be closed. As you know you have seven years after the closure to file for a reopening, should the pain recur.
>
> If you are having trouble now please call Dr. Crowell's office and make an appointment, so we can complete this report. We will wait for a week or two to hear from you before replying to INA.

Grage interpreted the letter as advising that he had seven years within which to file a claim for permanent disability. There is no such seven-year period, so his understanding was in error.

Grage did not respond to the letter and unsuccessfully attempted to return to work. In October 1984, Grage's condition worsened. He was diagnosed as having degenerative joint disease, a bulging disc and nerve root compression. Grage's physicians concluded that his present condition was due to the 1981 injury and that Grage was permanently disabled from performing his former work as a laborer and from doing any other heavy physical work. On January 20, 1985, Grage filed a claim under the LHWCA seeking permanent total disability compensation, medical benefits and attorney's fees.

In the administrative proceedings, the employer contended that the claim was barred by section 13(a) of the LHWCA, which requires a claim to be filed within one year after the injury. 33 U.S.C. § 913(a). Grage argued that the claim was timely by virtue of the tolling provision of that section. 33 U.S.C. § 913(a). Section 13(a) provides in pertinent part:

> Except as otherwise provided in this section, the right to compensation for disability or death under this chapter shall be barred unless a claim therefore is filed within one year after the injury. . . . The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment.

33 U.S.C. § 913(a).

The Administrative Law Judge rejected Grage's position that the time for the filing of his claim did not begin to run until the October 1984 diagnosis. On his own initiative, the ALJ called for briefing on the question of whether the Clinic was Martinac's agent such that Martinac was estopped from asserting a time bar defense. The ALJ eventually ruled in favor of Grage on this theory, concluding that the employer and its insurer were bound by the mistaken legal advice that the Clinic gave Grage regarding a seven year period within which to file his claim, because the employer had created a situation where the Clinic appeared to be its agent. The Benefits Review Board affirmed this finding on appeal.

■ In this appeal, Martinac and its insurer correctly argue that there is no basis for imputing the Clinic's legal advice to them. The ALJ based his finding of the Clinic's apparent authority to make such statements on the fact that Martinac took Grage to the Clinic, as it did for most of its employees, and that Martinac or its insurer

paid the Clinic's bills and directed its inquiries directly to the Clinic. None of these facts suggest that either Martinac or its insurer authorized the Clinic to give legal advice. Under Washington law, the test for apparent authority is whether Martinac put the Clinic in such a position that a person of ordinary prudence would believe that the Clinic possessed the authority to inform Martinac's employees of the deadline for their compensation claims.[1] *Taylor v. Smith*, 13 Wash.App. 171, 534 P.2d 39, 43 (1975) (quoting *Larson v. Bear*, 38 Wash.2d 485, 230 P.2d 610, 613 (1951)); *see, e.g., Lamb v. General Assocs., Inc.*, 60 Wash.2d 623, 374 P.2d 677, 680 (1962). The apparent authority of an agent can only be inferred from acts of the principal and not from acts of the agent. *Pierson v. United States*, 527 F.2d 459, 462 (9th Cir.1975) (interpreting Washington law); *Lamb*, 374 P.2d at 680. Because Martinac's actions did not place the Clinic in a position of authority to give legal advice, we find that Martinac was not bound by the Clinic's inaccurate legal information and could assert a time bar defense.

We also reject Grage's argument that Martinac is responsible for the Clinic's negligent legal advice because it had a nondelegable duty under the LHWCA to provide Grage with medical care. Assuming arguendo that Martinac had a duty to provide medical care, it had no duty to provide legal care and therefore would bear no responsibility for the Clinic's negligence in giving legal advice. *Cf. Hewson Const., Inc. v. Reintree Corp.*, 101 Wash.2d 819, 685 P.2d 1062, 1064 (1984) (en banc) (property owners not responsible for payment of repairs contracted for by developer where owners had no duty to make such repairs); *Shea v. City of Spokane*, 17 Wash.App. 236, 562 P.2d 264, 268 (1977) (where employer has no duty to provide medical treatment to its employees, the employer will not be liable for the negligence of physicians), *aff'd*, 90 Wash.2d 43, 578 P.2d 42 (1978) (en banc).

■ In its brief in support of the administrative decision, the United States argues that, even if the decision below was incorrect in its application of agency and estoppel principles, Grage's claim was nevertheless timely under section 13(a). We may affirm an order of the Benefits Review Board on a different ground or principle than that relied on by the Board. *Todd Shipyards Corp. v. Director, O.W.C.P.*, 848 F.2d 125, 127 n. 3 (9th Cir.1988); *Parsons Corp. v. Director, O.W.C.P.*, 619 F.2d 38, 42 (9th Cir.1980); *see also United Brands Co. v. Melson*, 594 F.2d 1068, 1072 n. 10 (5th Cir.1979).

■ Section 13(a) provides that the time for filing does not begin to run until the employee is aware, or should have been aware, of the relationship between the injury and the employment. 33 U.S.C. § 913(a). We held in *Todd Shipyards Corp. v. Allan*, 666 F.2d 399, 401–02 (9th Cir.), *cert. denied*, 459 U.S. 1034, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982), that this section, which was added in 1972, means that the time for filing does not being to run until the employee is aware that his or her injury has resulted in the impairment of his or her earning power. *See, e.g., Bechtel Associates, P.C. v. Sweeney*, 834 F.2d 1029, 1033 (D.C.Cir.1987); *Marathon Oil Co. v. Lunsford*, 733 F.2d 1139, 1141 (5th Cir. 1984). Furthermore, an injured employee is not "injured for purposes of the statute of limitations until 'he [becomes] aware of the full character, extent, and impact of the harm done to him.' " *Todd*, 666 F.2d at 401 (quoting and affirming decision of Benefits Review Board); *see, e.g., Marathon Oil Co.*, 733 F.2d at 1141; *cf. Urie v. Thompson*, 337 U.S. 163, 168–71, 69 S.Ct. 1018, 1023, 93 L.Ed. 1282 (1949) (under Federal Employees' Liability Act, statute of limitations period does not commence until victim has had an opportunity to know the true nature of his injury). Here, Grage did not become aware of the full extent and impact of his injuries until October of 1984, when he learned of his degenerative joint

---

1. The parties do not question the appropriateness of applying Washington law for principles of agency.

disease and consequently, of his permanent disability.

In holding otherwise, the ALJ erroneously viewed the time for filing as triggered when the employee knew that he was temporarily unable to work. Our decision in *Todd* is contrary. 666 F.2d at 400–02. In *Todd*, the claimant's physician had originally misdiagnosed the severity of the injury and we allowed filing for disability compensation two years after the initial occurrence. We concluded that even though claimant suffered recurrent pain and dizziness, he did not know that he had suffered a "compensable injury" for purposes of the LHWCA until he was properly diagnosed and hence "aware of the full character, extent and impact of the harm done to him." *Id.*

The ALJ's determination also contravenes the D.C. Circuit's decision in *Stancil v. Massey*, 436 F.2d 274 (D.C.Cir.1970). *Stancil*, which we relied upon in *Todd*, 666 F.2d at 401, involved a situation virtually identical to the one at bar. Claimant Stancil, like Grage, was originally told by his physicians that he suffered from a mild back strain and that his pain would gradually decrease and go away. Like Grage, Stancil received temporary disability payments at the time of his initial injury. *Stancil*, 436 F.2d at 275. He was later diagnosed as suffering from a herniated disc. The insurer in *Stancil*, like INA in the case at bar, argued that since Stancil continued to suffer pain and could only perform light work, he must have previously known, despite the doctor's misdiagnosis, that his capacity to work had been impaired. *Id.* at 278, n. 8. The D.C. Circuit rejected this argument and held that Stancil had the right to rely on his doctor's diagnosis that he was not physically disabled. The court held that Stancil suffered no statutory "injury" until he was properly diagnosed and need not have filed a claim under section 13(a) until that time. *Id.* at 278; *see also Marathon Oil Co.*, 733 F.2d at 1141 (fact that claimant did not work for three weeks after his fall in 1976 did not preclude filing for compensation in 1978, when in 1976 doctor misdiagnosed his problem as one of passing aches and pains).

We, therefore, find that the LHWCA's statute of limitations period was tolled until October 1984 when Grage discovered that his disability was permanent; only then did he become "aware of the full character, extent and impact of the harm done to him." *Todd*, 666 F.2d at 401. Our holding is in keeping with the well established principle that the LHWCA is a humanitarian act and "must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results." *Voris v. Eikel*, 346 U.S. 328, 333, 74 S.Ct. 88, 92, 98 L.Ed. 5 (1953); *accord, Director, O.W.C.P. v. Perini North River Assocs.*, 459 U.S. 297, 315–16, 103 S.Ct. 634, 646, 74 L.Ed.2d 465 (1983). Public policy is served by not discouraging workers' attempts to return to work and by not encouraging premature claims of permanent disability.

AFFIRMED.