911 F.2d 247
 Margaret L. JOHNSON, Petitioner and Cross-Respondent,
v.
DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS; Todd
Pacific Shipyards Corporation; and Aetna Casualty
and Surety Company, Respondents and
Cross-Petitioners.
 Nos. 88-7223, 88-7245.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 2, 1989.
Decided Aug. 13, 1990.
 
 Jeffery P. Robinson and Paul W. Whelan, Schroeter, Goldmark & Bender, Seattle, Wash., for petitioner/cross-respondent.
 Russell A. Metz and Charles E. Henshall, Witherspoon, Kelley, Davenport & Toole, Seattle, Wash., for respondents/cross-petitioners.
 Appeal from the Decision and Order of the Benefits Review Board.
 Before BROWNING, SCHROEDER and FLETCHER, Circuit Judges.
 SCHROEDER, Circuit Judge:
 
 
 1
 The novel issue in this longshore worker's disability case is whether the victim of a traumatic accident should be compensated at the average weekly wage rate as of the time of the accident, or as of the subsequent time when the disability attributable to the injury became manifest. We disagree with the Benefits Review Board and agree with the decision of the Administrative Law Judge that the date of the manifestation of the disability controls. Our holding is consistent with other developments in longshore compensation law which recognize that consequences under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Secs. 901 et seq., flow from the time that an employee should reasonably be aware of the impairment as opposed to the time of the original accident. See J.M. Martinac Shipbuilding v. Director, O.W.C.P., 900 F.2d 180, 183-84 (9th Cir.1990); Todd Shipyard Corp. v. Black, 717 F.2d 1280, 1287-91 (9th Cir.1983), cert. denied, 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984); Todd Shipyards Corp. v. Allan, 666 F.2d 399, 401-02 (9th Cir.), cert. denied, 459 U.S. 1034, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982); see also Bechtel Assocs., P.C. v. Sweeney, 834 F.2d 1029, 1033 (D.C.Cir.1987); Marathon Oil Co. v. Lunsford, 733 F.2d 1139, 1141 (5th Cir.1984); Stancil v. Massey, 436 F.2d 274, 278 (D.C.Cir.1970).
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 Appellant Margaret Johnson sought benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. Secs. 901 et seq. (1986), for injuries sustained in the course of her employment with respondent Todd Pacific Shipyards Corporation (Todd). On December 9, 1979 while working as a scaler, Johnson fell through an opening in a vessel and injured her hands, wrist and hip. Johnson worked intermittently after her injury but experienced continued pain and increased swelling in her hands until she had to cease work altogether on May 23, 1983.
 
 
 3
 The Administrative Law Judge (ALJ) found that Johnson's hand injury arose in the course of her employment, that Johnson was permanently and totally disabled by the injury, and that Todd failed to demonstrate suitable alternative employment for her. The ALJ accepted the average weekly wage of $519.29 as the best estimation of Johnson's earning capacity when she became permanently disabled.
 
 
 4
 The Benefits Review Board (BRB) upheld the ALJ's finding that Johnson had suffered permanent total disability as a result of her hand injury. The BRB, however, rejected the ALJ's average weekly wage determination on the ground that the ALJ should have calculated the amount of benefits owed to Johnson on the basis of her average weekly wage at the time of her accident in December 1979, rather than on the basis of the best estimate of her average weekly wage at the time of her permanent disability in 1983. Johnson seeks review of the BRB's legal determination that the time of the accident controlled the calculation of her average weekly wage. Todd seeks review of the BRB's determination that Johnson was permanently and totally disabled as a result of her hand injury.
 
 DISCUSSION
 
 5
 The LHWCA provides that injured employees shall receive compensation for permanent total disabilities based on a percentage of their "average weekly wages." 33 U.S.C. Sec. 908(a). Under section 910, the average weekly wage for disability compensation is based upon the injured employee's average weekly wage "at the time of the injury." The unusual feature of this case is that the claimant's injury, although due to a traumatic episode, was not evident until a few years later. The novel issue presented here is therefore whether "injury" under the statute means injury as of the time of the accident or injury as of the time when the disability attributable to the injury becomes manifest.
 
 
 6
 Todd Shipyards Corp. v. Black, 717 F.2d at 1287-91, strongly supports Johnson's position that the time of disablement rather than the time of the accident defines the point of injury for determining a permanently disabled claimant's average weekly wage under 33 U.S.C. Sec. 910. In that asbestosis case we confronted the question of whether the time of injury in the case of an occupational disease refers to the time when a disability due to disease manifests itself or to the time when an injured worker is exposed to the disease-causing substance. We concluded that the former date controls for the purpose of calculating a permanently disabled claimant's average weekly wage under the LHWCA. Id. at 1291.
 
 
 7
 Todd argues that the time of the accident constitutes the time of injury under section 910, even though the full effect of the accident remains unknown until much later. Todd relies on our language in Black where we stated, "[i]n most cases of traumatic injury, the time of injury will coincide almost exactly with the time the worker is disabled." Id. at 1288. Rather than establishing that the time of trauma defines the time of disablement for purposes of section 910, however, this language in Black simply foreshadows the problem that would arise in exceptional cases, like the one at bar, where the onset of the disability occurs years after the initial trauma.
 
 
 8
 Congress has now amended the LHWCA to codify our Black decision, providing that "with respect to a claim for compensation for ... disability due to an occupational disease which does not immediately result in ... disability, the time of injury shall be deemed to be the date on which the employee ... becomes aware ... of the relationship between the employment, the disease, and the ... disability." 33 U.S.C. Sec. 910(i)(1988), as amended by Act of Sept. 28, 1984, Pub.L. No. 98-426, Sec. 10, 98 Stat. 1647.
 
 
 9
 Although Black involved an occupational disease, both its rationale and dicta indicate that its holding should apply to the manifestation of latent and unknown injuries as well. Black did not distinguish between occupational disease and occupational injury but rather treated both terms similarly. 717 F.2d at 1291. By the same token, we have rejected employers' arguments that "traumatic injuries" should be treated differently from "latent injuries" or "occupational diseases" for purposes of the LHWCA's statute of limitations provision, 33 U.S.C. Sec. 913(a). Todd Shipyards Corp. v. Allan, 666 F.2d at 401. As Judge Learned Hand aptly observed, the LHWCA is "not concerned with pathology, but with industry disability; and a disease is no disease until it manifests itself.... [A]n infection mastered, though latent, is no longer a disease, industrially speaking, until the individual's resistance is again so far lowered that he succumbs." Grain Handling Co. v. Sweeney, 102 F.2d 464, 466 (2d Cir.), cert. denied, 308 U.S. 570, 60 S.Ct. 83, 84 L.Ed. 478 (1939), quoted in Black, 717 F.2d at 1290. Here, Johnson did not "succumb" until her hands were so inflamed that she could no longer work.
 
 
 10
 We have interpreted the word injury to mean the date of disability rather than the time of the accident when interpreting other sections of the LHWCA. In Allan, for example, we held that a claimant is not injured under the LHWCA's statute of limitations provision, 33 U.S.C. Sec. 913(a), "until 'he [becomes] aware of the full character, extent, and impact of the harm done to him.' " 666 F.2d at 401 (quoting and affirming decision of the BRB) (emphasis omitted); accord Martinac, 900 F.2d at 183-84; Marathon Oil Co., 733 F.2d at 1141. In Martinac we rejected an employer's argument that the LHWCA's statute of limitations period was triggered at the point of a claimant's accident, holding instead that even where a claimant suffered temporary disability, the period did not begin to run until a claimant learned that he or she was permanently disabled.
 
 
 11
 In Stancil v. Massey, the D.C. Circuit discussed the terms, "injury," "disability," and "accident," as used in the LHWCA. 436 F.2d at 276, relied upon in Martinac, 900 F.2d at 184, and Allan, 666 F.2d at 401. The D.C. Circuit noted that Congress in the LHWCA's statute of limitations provision, as in the permanent disability wage calculation provision, used the word "injury" as opposed to "accident." Id. The court observed that "accident" refers to the event causing the harm, while "injury" refers "to the harmful physical ... consequences of that event which need not occur or become obvious simultaneously with the event." Id. The court concluded that Congress did not intend to tie injury to the fixed point of the accident. Rather, injury "should encompass physical harm of a kind which is unknown to the employee at the time of the accident but which is later revealed, such as an occupational disease or a latent wound." Id. at 277. The court found that once a person has been "put on the alert ... as to the likely impairment of his earning power, there is an 'injury'; before that time, while there may have been an accident, there is as yet no 'injury'...." Id. The principles of Allan, Martinac and Stancil support the conclusion that in December 1979 Johnson suffered an "accident," but was not "injured" until 1983 when the continued strain on her previous hand impairment rendered her permanently disabled.
 
 
 12
 This interpretation also serves the purpose of section 910. This section compensates a worker for a loss of future earning capacity rather than for loss of past earning capacity. See Black, 717 F.2d at 1289. Use of Johnson's accident date as the basis for recovery would thwart that purpose by providing compensation on the basis of a past wage rate for a disability that occurred years later. Moreover, were we to hold that benefits should be based on wages at the time of a potentially disabling accident, we would discourage workers like Johnson from attempting to return to work. This is because it would be to the claimant's advantage to file a claim of disability as soon as possible in order to begin receiving benefits at that level sooner rather than later. As we observed in Martinac, the purposes underlying the statute are served by "not discouraging workers' attempts to return to work and by not encouraging premature claims of permanent disability." 900 F.2d at 184.
 
 
 13
 For all of these reasons, we conclude that the Board should have approved the Administrative Law Judge's decision applying the time of the disability rather than the time of the accident to measure the amount of compensation under section 910.
 
 
 14
 The only remaining issue is whether the ALJ's determination that Johnson was in fact disabled as a result of her hand injury is supported by substantial evidence. As to this issue Todd has filed a cross-petition. Under Bumble Bee Seafoods v. Director, OWCP, 629 F.2d 1327 (9th Cir.1980), Todd bore the burden of demonstrating the availability of suitable employment for Johnson. Id. at 1329. It failed to meet this burden. None of the potential employers proffered by Todd stated that they would consider employing a person with Johnson's deficiencies. A rehabilitation counselor testified that there was no job in the competitive labor market which Johnson could engage in. Todd argues that the ALJ should have relied on the testimony of its vocational expert who stated that Johnson did not desire to work. The ALJ, however, did not find that evidence credible. As a general rule, we will not disturb an ALJ's assessment of a witness' credibility. See Goldsmith v. Director, OWCP, 838 F.2d 1079, 1081 (9th Cir.1988) (citing Dorris v. Director, OWCP, 808 F.2d 1362, 1364 (9th Cir.1987)). The record, therefore, supports the finding that Johnson suffered permanent disability as a result of her hand injury.
 
 
 15
 The order of the Benefits Review Board is REVERSED IN PART AND REMANDED. Costs are awarded to Johnson.