Daniel C. ABEL, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, Jones Oregon Stevedoring Company, Respondents.

No. 87–7516.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 1990.

Decided May 8, 1991.

Charles Robinowitz, Portland, Or., for petitioner.

Jay Beattie, Lindsay, Hart, Neil & Weigler, Portland, Or., for Jones Oregon.

Marianne Smith, U.S. Dept. of Labor, Washington, D.C., for Office of Workers Compensation Programs.

Before CANBY and TROTT, Circuit Judges, and LEGGE,* District Judge.

CANBY, Circuit Judge:

Daniel Abel petitions for review of a decision of the Benefits Review Board denying him benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* The Benefits Review Board upheld the Administrative Law

---

* The Honorable Charles A. Legge, United States District Judge for the Northern District of California, sitting by designation.

Judge's determination that Abel's claim for benefits was untimely. We grant the petition, reverse and remand.

## BACKGROUND

Abel, a longshoreman, suffered an employment-related injury on October 14, 1980, when a gangplank rolled over his leg, injuring his left knee. Abel was unable to work for two weeks after the accident. During this time Jones Oregon Stevedoring Co., the employer, paid Abel temporary total disability benefits without award. Abel returned to work, but missed days intermittently over the next few months.

Although Abel's knee did not require medical treatment for six months, in the fall of 1981 it worsened and he returned to his physician, Dr. Donnelly. By February 16, 1982, the pain in Abel's knee increased so much that Dr. Donnelly told him to take three weeks off work. Because his condition was not improving, Dr. Donnelly wrote to Jones Oregon requesting it to send Abel to an orthopedic surgeon. Jones Oregon did not respond.

On August 5, 1982, Abel filed a claim for compensation under the Longshore and Harbor Worker's Compensation Act (LHWCA), 33 U.S.C. § 901 et seq. One month later, in September 1982, Abel sought out an orthopedist. The orthopedist indicated that Abel's knee problems stemmed from his October 1980 employment injury. The orthopedist recommended physical therapy and examination by a rheumatologist. Later that month, a rheumatologist diagnosed calcium crystallization (chondrocalcinosis) of Abel's left knee, resulting from the October 1980 employment injury. The doctor advised Abel to retire from longshore work, which Abel did in April 1983.

Abel's claim for compensation was heard by an Administrative Law Judge. The ALJ found that Abel had sustained an employment-related knee injury on October 14, 1980, and that Abel was aware of the relationship between his injury and his employment on that same date. Consequently,

the ALJ concluded that Abel's August 5, 1982 claim was not timely. After the hearing, Abel moved for the ALJ to reconsider or modify his original decision due to the failure by either the claimant or the employer to allege the proper legal standard for application of the section 13(a) statute of limitations. In a supplemental decision, the ALJ denied Abel's request.

Abel appealed the ALJ's decision and the supplemental decision to the Benefits Review Board, arguing that under *Todd Shipyards v. Allan*, 666 F.2d 399 (9th Cir.), *cert. denied*, 459 U.S. 1034, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982), "awareness" of a work-related injury that triggers the section 13(a) statute of limitations occurs only after a claimant first becomes aware of the full character, extent and impact of the harm. The Board rejected Abel's position and denied his claim as untimely, holding that the *Todd* standard is applicable only in cases of misdiagnosis or incorrect prognosis.

## ANALYSIS

Abel presents three arguments on appeal: (1) the ALJ and the Board erroneously failed to apply the standard established by *Todd*, for determining when the statute of limitations is triggered; (2) a medical report in Jones Oregon's possession constituted a timely claim for disability benefits under the LHWCA; and (3) Jones Oregon had an obligation to file a medical report received from Abel's doctor with the Deputy Commission as a timely claim. Because we conclude that the *Todd* standard should have been applied to Abel's claim, we do not reach his other challenges.

## I. JURISDICTION

■ Before we can reach the merits of this appeal, we must address appellee's argument that we lack jurisdiction to hear it. Jones Oregon contends that Abel's failure to raise his *Todd* arguments below precludes this court from addressing these issues on appeal.[1] Generally, we will not

---

1. At the administrative hearing, Abel neither objected to the standard applied by the ALJ, nor

offered the *Todd* decision as the appropriate interpretation of section 13(a).

hear issues that were not presented to an administrative agency at the appropriate time. *See Reid v. Engen,* 765 F.2d 1457, 1460 (9th Cir.1985). However, where a claim is fully presented before the administrative process ends, the doctrines of exhaustion and waiver are not applicable. *Getty Oil Co. v. Andrus,* 607 F.2d 253, 256 (9th Cir.1979). After the hearing before the ALJ, the Benefits Review Board entertained and decided Abel's claim on the merits. We therefore may address the issue in reviewing the Board's decision pursuant to 33 U.S.C. § 921(c)(1988).

## II. STANDARD OF REVIEW

We review decisions of the Benefits Review Board for errors of law and adherence to the substantial evidence standard that governs the Board's review of the ALJ's factual determinations. *Hairston v. Todd Shipyards Corp.,* 849 F.2d 1194, 1195 (9th Cir.1988); *Long v. Director, OWCP,* 767 F.2d 1578, 1580 (9th Cir.1985). The Board's interpretation of the LHWCA is not entitled to any special deference from the court. *Potomac Electric Power Co. v. Director, OWCP,* 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980). Because the statute charges the Director with the responsibility of implementing, administering and enforcing the Act, the Director's construction of its terms is entitled to deference. *See Director, OWCP v. Palmer Coking Coal Co.,* 867 F.2d 552, 555 (9th Cir.1989).[2]

## III. TIMELINESS OF CLAIM

Section 13(a) sets forth the statute of limitations for filing claims of temporary or permanent disability under the LHWCA. This provision states:

Except as otherwise provided in this section, the right to compensation for disability or death under this chapter shall be barred unless a claim therefore is filed within one year after the injury or death. If payment of compensation has been made without award on account of such injury or death, a claim may be filed

within one year after the date of the last payment.... The time for filing a claim shall not begin to run until the employee ... is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment.

33 U.S.C. § 913(a) (1988). In *Todd Shipyards v. Allan,* 666 F.2d 399 (9th Cir.), *cert. denied,* 459 U.S. 1034, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982), we held that section 13(a) means that the limitations period does not begin to run until the employee is aware that his injury has resulted in the impairment of his earning power. Furthermore, we held that a claimant is not injured for purposes of the section 13(a) statute of limitations until "he [becomes] aware of the *full character, extent and impact of the harm done to him." Id.* at 401 (emphasis in the original). The Board concluded that the standard articulated in *Todd* is applicable only when a physician misdiagnoses the work-related nature of a claimant's injury. We disagree.

The determinative issue in *Todd* was whether the claimant knew or should have known the full extent of his work-related injury. In *Todd,* the claimant, who had suffered a work-related injury to his neck and shoulder, was told he had a bad bruise which would go away. Two and one-half years and several consultations later, X-rays showed a change in his back condition, and doctors diagnosed Allan's condition as progressive cervical spondylosis. We concluded that Allan was not aware of the full character, extent and impact of the harm done to him until doctors diagnosed his actual condition. Only then "did Allan know that there was an injury in the sense contemplated by § 13(a)—an impairment of earning power." *Id.* at 401–02.

In reaching our decision in *Todd,* we relied on the District of Columbia Circuit's decision in *Stancil v. Massey,* 436 F.2d 274 (D.C.Cir.1970). In *Stancil,* after a work-related injury, doctors misdiagnosed the claimant's back condition as mild back strain, and eventually concluded that he

**2.** Here the Director, OWCP, agrees with Abel that the proper legal standard for application of the section 13(a) statute of limitations is the one articulated in *Todd.*

had no disability. Later surgery revealed that claimant suffered from a ruptured or herniated disc. The D.C. Circuit held that his claim, filed three and one half years after the accident, was timely. Although the *Stancil* court concluded that the claimant could not have been reasonably aware of the full extent of his injury until his condition was properly diagnosed, the court explained that misdiagnosis was not essential to its decision:

> We are not holding that the running of limitations was deferred simply because a "wrong diagnosis" was made.... The issue is not the correctness of the diagnosis *per se*. The question is whether the employee reasonably believed that he was not physically disabled, *i.e.* he had not suffered a work-related harm which would probably diminish his capacity to earn his living. In some instances, a wrong diagnosis will have no bearing on that inquiry since even the incorrect evaluation should have warned the employee.

*Id.* at 278–79. We agree with the D.C. Circuit's analysis.[3]

■ We recently reaffirmed *Todd* in *J.M. Martinac Shipbuilding v. Director, OWCP*, (*Grage*), 900 F.2d 180, 183–84 (9th Cir.1990). In *Grage*, the claimant's doctor diagnosed a severe back injury, advised Grage that it would take two to three years for his back to heal, and released him for work three weeks after the injury occurred. Three years later, Grage was diagnosed as having degenerative joint disease, a bulging disc, and nerve root compression. In holding that the LHWCA's statute of limitations period was tolled until Grage discovered that his disability was permanent, we concluded: "Public policy is served by not discouraging workers' attempts to return to work and by not encouraging premature claims of permanent disability." *Grage*, 900 F.2d at 184. To limit the *Todd* holding to cases of misdiagnosis would circumvent this purpose.

We hold that the *Todd* standard applies to Abel's case. In determining whether the statute of limitations period under section 13(a) has begun to run, *Todd* requires us to determine when Abel became aware of the full character, extent and impact of the harm done to him.[4]

■ Applying this standard, we conclude that Abel could not have reasonably been aware of the full character, nature and extent of his work-related injury until March 1982.[5] A doctor's advice is the best of reasons for a claimant's believing himself not reduced in earning capacity. *Stancil v. Massey*, 436 F.2d 274, 279 (D.C.Cir. 1970). As in *Todd* and *Grage*, Abel reasonably relied on his doctor's advice that his knee would eventually heal. Dr. Donnelly released Abel for work only two weeks after the accident.[6] Although Abel missed days intermittently, for the next six months Abel's knee did not require medical attention. In February 1982, when the knee became more painful, Dr. Donnelly told Abel that the knee would not heal unless he took some time off work. Rely-

3. In accordance with *Stancil*, we have previously refused to limit the "awareness" language of section 13(a). For example, in *Todd* we rejected an employer's argument that this language applies only to latent injuries and occupational diseases. *Todd*, 666 F.2d at 401.

4. We note that our result is consistent with the decisions of other circuits. *See Brown v. Jacksonville Shipyards Inc.*, 893 F.2d 294, 296–97 (11th Cir.1990) (rejecting misdiagnosis distinction; citing *Todd* and *Stancil*); *Stancil v. Massey*, 436 F.2d 274, 277–79 (D.C.Cir.1970); *see also Bath Iron Works Corp. v. Galen*, 605 F.2d 583, 585 (1st Cir.1979) (rejecting misdiagnosis distinction as applied to LHWCA section 912(a); section 12(a) mirrors the language of section 13(a)); *Marathon Oil Co. v. Lunsford*, 733 F.2d 1139, 1141 (5th Cir.1984) (claim for later developing consequences of injury not barred by one year statute of limitations); *Bechtel Associates*,

*P.C. v. Sweeney*, 834 F.2d 1029, 1033–34 (D.C. Cir.1987) (claimant not aware that work-related pulmonary would decrease his earning power until six years later when his doctor recommended that he retire).

5. We agree with the Director that the evidence in this case justifies us in holding Abel's claim to be timely as a matter of law.

6. In a letter to Jones Oregon, Dr. Donnelly reported that "there may be some permanent residual." Although Dr. Donnelly's letter postulates that permanent damage was possible, we do not believe it would cause a reasonable person to conclude that their earning potential was impaired in light of the circumstances. Such a rule would force employees to report every ache and sore throat that might lead to eventual disability. *Bath Iron Works Corp. v. Galen*, 605 F.2d 583, 586 (1st Cir.1979).

ing on that advice, Abel took three weeks off work. In March, after the knee had not improved, Dr. Donnelly first indicated that the knee problem was more serious than originally anticipated. At that time, the doctor recommended that Abel consult an orthopedic surgeon.

Jones Oregon argues that Abel should have been aware earlier of the serious consequences of his injury because he continued receiving treatment from Dr. Donnelly, continued to have significant complaints about his knee, and periodically missed time from work. We rejected a similar argument in *Todd* when we concluded that the claimant's recurring pain and dizziness did not cause him to be aware of the compensable nature of his injury where the claimant's doctor repeatedly told him that his injury was not severe.

Accordingly, we conclude that Abel's August 5, 1982 claim for benefits was timely. We reverse and remand for further proceedings consistent with this opinion.