61 F.3d 900
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Katie Mae HUNT, Petitioner,
v.
NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY,
Self-Insured; Director, Office of Workers'
Compensation Programs, United States
Department of Labor, Respondents.
 No. 95-1035.
 United States Court of Appeals, Fourth Circuit.
 Argued May 1, 1995.
Decided July 19, 1995.
 
 ARGUED: Robert Elliott Walsh, RUTTER & MONTAGNA, Norfolk, VA, for Petitioner. Lawrence Philip Postol, SEYFARTH, SHAW, FAIRWEATHER, & GERALDSON, Washington, DC, for Respondents.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Katie Mae Hunt appeals the reversal by the Department of Labor Benefits Review Board ("Board") of an administrative law judge's ("ALJ") finding that Hunt was dismissed due to anti-compensation animus in violation of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. # 8E8E # 901-950. Finding that the ALJ's opinion is unsupported by substantial evidence, we affirm the Board's decision.
 
 I.
 
 2
 Hunt began working at the Newport News Shipbuilding and Dry Dock Company ("shipyard") in 1979. She was required by the shipyard to complete a pre-employment physical form which included questions about pre-existing physical conditions and prior medical treatment. Hunt also filled out an application form that stated that any falsification on pre-employment documents would be grounds for immediate dismissal.[1] She nonetheless failed to include a number of chronic conditions and past injuries and illnesses in her answers on the physical form.
 
 
 3
 In 1983, Hunt suffered a work-related injury to her left foot which resulted in her missing time and eventually being placed in a light duty job. She filed a workers' compensation claim seeking, in part, reimbursement of medical expenses due to her injury.
 
 
 4
 The claim was referred to Antje Huck, an attorney for the shipyard, who was asked to investigate the eligibility for compensation of certain medical care provided by Dr. Charles Ewing. Huck found it difficult to determine from the records in Hunt's file which expenses were attributable to visits to Dr. Ewing for work-related injuries and which were for other reasons or to other doctors. Huck requested subpoenas of Hunt's medical records in order to clarify the scope of Hunt's claim.
 
 
 5
 In those records, Huck found a reference to a right-foot injury similar to that to Hunt's left foot. Huck wondered whether some confusion about which foot was injured had arisen, and she requested further records of the doctor who had treated the right-foot injury. Huck admits that at this point she was not only seeking clarification of the claim but also closely examining the subpoenaed records and the preemployment physical form to ensure that the claimed damages were not attributable to past injuries and thus not compensable under 33 U.S.C. Sec. 908(f)(1).
 
 
 6
 As her investigation broadened, Huck found that a number of discrepancies existed between the subpoenaed records and the answers on the pre-employment forms. Huck was aware that company policy allowed discharge if an employee is found to have falsified records.[2] Upon determining that apparent falsifications existed, Huck informed the personnel department at the shipyard.
 
 
 7
 The personnel department immediately began disciplinary proceedings consistent with company policy. Hunt initially denied that the medical records were accurate, but she subsequently admitted the falsification and claimed that she had not disclosed the omitted information because of labor unrest at the shipyard. Hunt was discharged after being afforded two hearings at which no reference to her disability claim was made.
 
 II.
 
 8
 Hunt filed suit, and the matter was brought before an ALJ. Sandra Bakkethun, the Supervisor of Personnel at the shipyard who presided over Hunt's final dismissal hearing, testified at the administrative hearing that she had previously discharged six employees for falsification of employment records and that Hunt's case was handled routinely. Zachary Tabb, who held the preliminary dismissal hearing, testified that 10 or 12 of the 50 people who he had dismissed were let go due to falsification. Both noted that intent was irrelevant to the decision to discharge and that, although a few of those dismissed had pending workers' compensation claims, the existence of such claims was never considered in dismissal proceedings.
 
 
 9
 The ALJ found that Hunt's discharge violated the LHWCA because the shipyard had used discovery improperly to uncover grounds for firing Hunt in violation of 33 U.S.C. Sec. 948(a). He held that claimants were discriminated against as a class because the subpoena power allowed under the LHWCA for 33 U.S.C. Sec. 908 purposes uniquely subjected them to a greater risk of discovery of, and termination for, any falsification of records. The ALJ found that anticompensation animus could be inferred from the vigor with which the shipyard investigated Hunt's records. The shipyard was ordered to reinstate Hunt and to pay damages.
 
 
 10
 The Board reversed, finding that the ALJ's opinion was unsupported by substantial evidence. The Board held that the ALJ had no basis upon which to find discrimination or infer animus given that he had credited shipyard testimony that all employees found to have falsified records were fired and that appropriate dismissal procedures were followed. The Board also found that the shipyard had a legitimate right to investigate Hunt under 33 U.S.C. Sec. 908 and that it was not a violation of 33 U.S.C. Sec. 948 to use information gathered therefrom to dismiss an employee.
 
 III.
 
 11
 The Board's decision reversing the ALJ's finding will be affirmed if supported by substantial evidence and in conformity with the law. Zapata Haynie Corp. v. Barnard, 933 F.2d 256, 258 (4th Cir.1991).
 
 
 12
 The Board may be affirmed on different grounds than those upon which it relied. J.M. Martinac Shipbuilding v. Director, Office of Workers Compensation Programs, 900 F.2d 180, 183 (9th Cir.1990).
 
 
 13
 It is a violation of 33 U.S.C. Sec. 948a for an employer to discriminate against an individual or group because of animus arising out of the pursuit of workers' compensation under the LHWCA. Holliman v. Newport News Shipbuilding & Dry Dock, 852 F.2d 759, 761 (4th Cir.1988). Animus may be found even if the employer's actions are only partially motivated by the employee's exercise of rights, Geddes v. Benefits Review Board, 735 F.2d 1412, 1415 (D.C.Cir.1984), and the existence of animus may be inferred from the circumstances surrounding the discriminatory action. Brooks v. Newport News Shipbuilding & Dry Dock, 26 BRBS 1, 3 (1992).
 
 
 14
 In order to sustain her claim, Hunt must show that anticompensation animus arose at some point during the shipyard's investigation of her compensation claim. The ALJ analyzed Hunt's dismissal as a three-step process. First, Huck subpoenaed Hunt's medical records to clear up confusion arising from the medical records relevant to the compensation claim. Huck next examined the subpoenaed records and compared them to the pre-employment physical form. Finally, the termination proceedings were held at the shipyard and Hunt was dismissed.
 
 
 15
 The ALJ found, and the Board agreed, that no animus could be found either during the first or third phase of the investigation and dismissal. The shipyard is entitled under the LHWCA to investigate the nature and extent of workplace injuries to ensure that it does not pay for pre-existing or non-existent injuries. The shipyard is also allowed to establish uniform policies and procedures to deal with employee misconduct. Animus was not the motivating factor at the onset of the investigation and was irrelevant to the termination hearings. In order for animus to be found, therefore, it must be shown to have arisen at some point following Huck's initial efforts at determining the scope and legitimacy of Hunt's claim.
 
 
 16
 In making that determination, the ALJ held that the shipyard is not free to zealously pursue potential grounds for misconduct through a statutory discovery process designed to prevent misdirected compensation. It was this pursuit, during the second phase of the termination process, that the ALJ found to evidence anti-compensation animus. The ALJ stated that "counsel's intense investigation of Claimant and subsequent retrieval of her employment application were motivated at least in part by an attempt to discover grounds upon which the Claimant could be terminated." The ALJ never suggested, however, when anti-compensation animus arose or indicated what testimony evidenced that the desire to terminate Hunt arose from her compensation claim.
 
 
 17
 The ALJ's findings of fact reasonably support a finding that, at some point in the investigation, Huck and those in the personnel department became more concerned with grounds for Hunt's dismissal than with clarifying her compensable injuries. There is, however, simply nothing in the record developed by the ALJ that indicates that the motivation to terminate was the desire to avoid a workers' compensation claim or in retaliation for the bringing of such a claim. Hunt needed to show that she was fired because, at least in part, she brought a claim. The record merely shows that she was fired because she omitted information on her pre-employment physical form and that the omission came to light as a result of the investigation of her claim.[3] The animus shown by the shipyard, if any, resulted from the mal-feasance of an employee and not the desire to avoid paying a claim.
 
 
 18
 There is no evidence of anti-compensation animus in the record.[4] The Board's reversal of the ALJ's decision is supported by substantial evidence and is affirmed.
 
 AFFIRMED
 
 
 [1]
 She was also made aware of the shipyard rule stating that: "The following acts and practices are expressly prohibited and will subject the offending employee to discharge or other discipline ... 10. Falsification of Company records."
 
 
 [2]
 Indeed, Huck had represented the shipyard in one dismissal case based upon falsification of records prior to her investigation of Hunt's claim
 
 
 [3]
 The ALJ credited essentially all of the testimony of the shipyard employees, and thus the Board reversed based upon the legal significance to be ascribed to the investigative efforts
 
 
 [4]
 Having found no evidence of animus, the issue of discrimination is moot