SANDERSON & PORTER *v.* CROW.

4-8643                                        216 S. W. 2d 796

Opinion delivered January 17, 1949.

*Buzbee, Harrison & Wright,* for appellant.

*J. B. Perrymore* and *Grant & Rose,* for appellee.

ED. F. McFADDIN, Justice. There is presented in this appeal the question of the applicability of a portion of § 18(a) of the Workmen's Compensation Law of 1939 [1] to the claim here involved. On December 6, 1946, L. A. Crow—hereinafter called appellee—filed his claim with the Workmen's Compensation Commission against his former employers, Sanderson & Porter, and their insurance carrier, the appellants here. On July 7, 1947, the Workmen's Compensation Commission disallowed appellee's claim, as barred by the limitations contained in § 18(a) of the Workmen's Compensation Law of 1939. The Circuit Court, on appeal, reversed the decision of the Commission, and entered judgment allowing appellee's claim. The correctness of that judgment is challenged by the present appeal.

Appellee, while employed by Sanderson & Porter at Pine Bluff, Arkansas, sustained a serious and painful injury on May 27, 1942. The nature of his injury was this: he fell on a steel rod which entered his left buttock, penetrated 16 or 18 inches through his pelvis into his abdomen, and pierced his intestines and colon. The phy-

---

[1] The Workmen's Compensation Law of 1939 was Act 319. At the General Election in November, 1948, the people adopted Initiated Act No. 4. Section 18 of the 1948 Act is different from § 18 of the 1939 Act; but the 1939 Act is the one applicable and under consideration in this case; and references herein are to the 1939 Act.

sician who treated him stated that the fact that appellee survived was "one of the most miraculous recoveries I have ever seen." Hospitalization and compensation claims were paid by the appellants; and on August 14, 1942, appellee signed a final receipt to appellants, who heard nothing more of appellee until the present claim was filed on December 6, 1946.

It was because of this long delay—from the settlement of August 14, 1942, until the claim of December 6, 1946—that the appellants invoked § 18(a) of the Workmen's Compensation Law of 1939, which reads in part: "The right to compensation for disability under this act shall be barred unless a claim therefor is filed within one year after the time of injury . . . except that if payment for compensation has been made in any case on account of such injury . . . *a claim may be filed within one year after the date of the last payment* . . . " (italics supplied). Furthermore, appellants defended before the Commission on the additional ground that any present disability of the claimant is not the result of the 1942 injuries; but that question was not reached by the Commission, since it held that the claim was barred under § 18(a) as aforesaid, pointing out that appellee received his last payment on August 14, 1942, and filed no further claim until December 6, 1946.

To avoid the applicability of the said § 18(a) of the 1939 Workmen's Compensation law, claimant insisted, before the Commission, the Circuit Court and this Court, that his present disability is the result of the latent injuries he sustained in 1942—that is, he contends that the full effects of his 1942 injuries were not disclosed until shortly before the filing of this present claim. The Workmen's Compensation Commission made findings denying this "latent injury" insistence; and the sufficiency of the evidence to support the Commission's findings on this point is the issue here presented.

The evidence shows that after the claimant executed the final receipt on August 14, 1942, he returned to his home in Alabama; that he began work in September, but was forced to cease working, and to consult a doctor for

treatment in October, 1942; that in 1943 he was treated by a doctor for two weeks; that he began working in a shipyard in Mobile in April, 1943, and continued to work until Christmas of that year, but was in the hospital for some time; that on April 24, 1944, he volunteered into the Naval Forces of the United States, and remained in the Navy for seven months, but was discharged on December 5, 1944. This is his testimony concerning his discharge from the Navy: ''Q. Were you discharged, you say, in December, 1944? That was after they X-rayed you overseas? A. Yes, sir, X-rayed me overseas. Q. And said you were unfit for active duty? A. He told me when he X-rayed my hip. The doctor said he seemed to think that that rod going into my stomach is, he said, 'There ought to be a broken bone showed up there somewhere.' He seemed to think, he said, 'I want to X-ray you before you go back home,' and he did X-ray me but never did tell me what was the matter.''

After appellee returned from the Navy, he did carpenter work for seven months in 1945, and then worked at a granary in 1946. In June of 1946, he had an attack affecting his back, and his doctor sent him to the Hot Springs Army-Navy Hospital for examination. It was in the latter part of 1946 that his physician and the Army doctors reached the conclusion that appellee's trouble was a herniated disc caused from the injuries he sustained while working for the appellants in 1942. Then this claim was filed.

We have recited the facts in considerable detail, for we hold that these facts are sufficient to support the Commission's finding that the claimant's present disability does not come within the rule of those cases called ''latent injury'' cases. Those cases hold that the statute of limitations begins to run from the date the injury becomes known. The word ''latent'' applies to that which is present without showing itself. Some cases on latent injuries are: *Lind* v. *Nebraska National Guard,* 144 Neb. 122, 12 N. W. 2d 652, 150 A. L. R. 1449; and *Kurtz* v. *Sunderland Bros. Co.,* 124 Neb. 776, 248 N. W. 84.

Even under the "latent injury" cases, when the substantial character of the injury becomes known, then the claimant must file his claim within a specified period of time, or be barred thereafter by the statute of limitations. In *Selders* v. *Cornhusker Oil Co.,* 111 Neb. 300, 196 N. W. 316, it was held that the latent injury became patent—so as to commence the running of the statute of limitations —when an X-ray revealed a bone injury. The case at bar is entirely different from that of *Fidelity & Casualty Co.* v. *Meyer,* 106 Ark. 91, 152 S. W. 995, 44 L. R. A., N. S. 493, where the injury aggravated a preexisting but latent disease; and the case at bar is also distinguishable from *Astuto* v. *Ray Gould Co.,* 123 Neb. 138, 242 N. W. 375. In that case the employee strained his back while lifting, but the full extent of the trauma did not become visible until later; while, here, the horrible nature of the injury was apparent from the first.

The evidence here shows that the appellee's injuries were not latent, but recurrent, that is, the effects of the May 27, 1942, injury recurred with regularity as evidenced by appellee's frequent visits to physicians. At all events, even if the injury were latent theretofore, certainly when the appellee was X-rayed and discharged from the Navy on December 5, 1944, any latent injury became patent so as to commence the running of the statute of limitations. Instead of filing a claim within a year from the date of the discharge from the Navy, appellee waited two years and one day before filing. There is no evidence that the physician of the appellants who treated appellee in 1942 defrauded him into signing the final receipt. This is not a case of setting aside a release because of fraud; rather, it is a case of undue delay in filing a claim.

The situation here is not comparable with that which existed in *Williams Mfg. Co.* v. *Walker,* 206 Ark. 392, 175 S. W. 2d 380. There, the Workmen's Compensation Law (§ 13(e) ) required notice of hernia to be given to the employer within 48 hours; and we held that the knowledge by the employer of the employee's injury was equivalent to notice by the employee. Here, the Workmen's Compensation Law (§ 18 (a) ) imposes an absolute limi-

tation on the time for filing a claim. In the Williams-Walker case we held that knowledge rendered notice unnecessary; but here we are presented with a case where no claim was filed within the statutory period. Thus, a jurisdictional matter is presented, and not a mere defensive provision of notice as in the Williams-Walker case.

Appellee's lack of knowledge of the law is no defense. He was in full possession of his mental faculties. However meritorious the claim may be, nevertheless, § 18(a) of the Workmen's Compensation Law is a bar, since the ''latent injury'' cases do not apply. While our Compensation Law is liberally construed to effectuate its purposes, still the plain wording of that law is a mandate which we cannot evade.

The judgment of the Circuit Court is reversed, and the cause is remanded to the Circuit Court, with directions to affirm the decision of the Workmen's Compensation Commission.

ROBINS, J., dissenting. I respectfully dissent. I agree with the learned circuit judge who tried the case below that appellee's present disability grew out of his original injury and that his claim was not barred by limitation.

Two physicians testified that the injury which appellee received while working for appellants, Sanderson and Porter, caused his existing disability; and appellants' physician who attended him immediately after the injury did not deny that the original injury was to the spine as well as to other parts of his body. So, it may be said that undisputed testimony established the injury at the plant of appellants, Sanderson and Porter, as the cause of the disability from which this unfortunate man is now suffering.

As to the bar of limitation, it is shown that a claim for disability growing out of this accident was in apt time filed on behalf of appellee—and appellants acknowledged liability thereon. The contention of appellants is that this claim did not embrace the spine injury which, it is now shown, appellee received from his fall on the

steel rod. But is appellee at fault in not including the spine injury in his claim when neither he nor the physician employed for him by appellants knew of the existence of such injury when the original claim was filed?

The evidence shows that this man was not a malingerer and that after his injury he did different kinds of work, which caused him much pain, in an honest effort to diminish his claim and make a living for his family. He even volunteered for wartime service in the navy, where he served until navy physicians had him discharged on account of the condition of his spine.

We dealt with a similar situation in the case of *Williams Manufacturing Company* v. *Walker,* 206 Ark. 392, 175 S. W. 2d 380. In that case the claim of a workman for disability by reason of hernia was resisted on the ground that the workman did not give notice of hernia within forty-eight hours, as required by the statute. The Workmen's Compensation Commission held that proper notice was not given and denied the claim, but the circuit court overruled the Commission and allowed it. In that case we said: "These compensation acts are entitled to and have universally received a liberal construction from the courts. The humanitarian objects of such laws should not, in the administration thereof, be defeated by overemphasis on technicalities—by putting form above substance. In the case at bar there is no intimation in the record of any malingering, lack of good faith, or misrepresentation or concealment of facts, on the part of appellee. Since he suffered an accidental injury in the course of his employment and it clearly appears that he did all that could be reasonably expected of a workman in the way of reporting his injury promptly and submitting himself to examination by his employer's physician, we conclude that the judgment of the lower court was correct and must be affirmed." I think the doctrine enunciated in that case is applicable here.

There seems to be concern lest, in requiring that appellee be paid what he claims as his share of a fund created, by the labor of workers, to protect themselves and society from pauperism resulting from disabling injuries to workers, we set a precedent that might some

time be unfair to an insurance carrier. We should be concerned, of course, with the rights of an insurance company in exactly the same manner and to exactly the same extent as we should protect and enforce the rights of every litigant before us. But we should not disregard entirely the rights of that great multitude of men and women who, with infinite patience and fortitude, have been down through the centuries, and still are, doing the world's hard, dirty and dangerous work. I submit that a decision like the one in this case, whereby an honest, self-reliant, but ignorant, laborer is deprived of his dues solely because he depended (as he was compelled to do) on the diagnosis of a physician selected for him by his employer, may hardly be called a milestone of progress along the road toward realization of man's age-old dream of equal justice to all.

The judgment below should be affirmed, with a modification that would diminish the amount of appellee's recovery by the amount otherwise allowable to him for such time (if any) after his injury during which he worked and received full pay.

Justice MILLWEE joins in this dissent.