T. J. Moss Tie & Timber Company *v.* Martin.

4-9696                                     247 S. W. 2d 198

Opinion delivered March 24, 1952.

*Leffel Gentry,* for appellant.

*Willis & Walker,* for appellee.

MINOR W. MILLWEE, Justice. The sole question presented on this appeal is whether appellee is barred from prosecuting a compensation claim for permanent partial disability under § 18 (a) of the 1939 Workmen's Compensation Law (Ark. Stats., § 81-1318[a]).[1] The facts are undisputed.

Appellee suffered a compound fracture of his right forearm on May 2, 1947, in the course of his employment by appellant, T. J. Moss Tie & Timber Co., at a sawmill in Boone County. His compensation claim for temporary total disability was controverted by the employer and the appellant insurance carrier, but was allowed by the Compensation Commission on October 16, 1947. The Commission ordered payment of compensation for temporary total disability through the maximum healing period with the further direction that it should then be determined whether permanent disability existed for which further compensation should be paid.

Appellee was treated by physicians at Harrison, Arkansas, but the injury failed to heal and he reported to Dr. Joe F. Shuffield of Little Rock, a prominent orthopedic surgeon, selected by appellants. Dr. Shuffield performed an operation on the arm prior to the original hearing in September, 1947. Appellee subsequently returned to Little Rock several times for examination and treatment by Dr. Shuffield and the compensation payments for temporary total disability were continued. At the last examination on April 14, 1948, Dr. Shuffield advised appellee that he felt sure his arm would be all right,

---

[1] This section was amended by § 18 of the 1948 Act which appears as § 81-1318 in the 1951 Cumulative Pocket Supplement to Ark. Stats.

but that it would take some time for the arm to regain its strength. Appellee was also advised to make light use of the arm in his work; that such use would cause considerable pain; and that a small knot on the arm would eventually disappear.

In his report to the Commission on June 12, 1948, Dr. Shuffield stated that the temporary disability had terminated and that appellee was able to resume work on May 3. The report concludes: "When I last saw him [April 14, 1948] I did not think there would be any permanent disability." On April 28, 1948, the insurance carrier's representative wrote counsel for appellee: "Last week I was in Dr. Shuffield's office and was advised that he felt reasonably sure Mr. Martin would have no permanent partial." Appellee signed and accepted a final settlement receipt and payment for temporary disability through April 15, 1948, which were enclosed in the letter.

Appellee testified that he then resumed the work of driving his truck on short trips, but did no lifting and noticed no change in the condition of his arm until about six months later when the knot began to get larger; that in June, 1949, he, accompanied by his father, was driving a truckload of peaches on a trip between Harrison and Clarksville which required more gear shifting than usual and his arm completely gave way and commenced to pain him severely. Three days later he consulted his doctor at Harrison who referred appellee to another orthopedic surgeon in Little Rock. The latter found that appellee then had a permanent partial disability of from thirty-five to forty per cent. involving the forearm and hand. Appellee further stated that after returning to work he followed the instructions and advice of Dr. Shuffield to the best of his ability and, in reliance thereon, kept thinking his arm would eventually be all right, until the occasion in June, 1949, when his arm completely gave way. Appellee's testimony was corroborated by that of his father.

On August 6, 1949, appellee filed a claim for compensation for permanent partial disability. Appellants' plea

that the claim was barred under § 81-1318 (a), *supra,* because it was not filed within one year of the date of the last payment of compensation was sustained by the referee and later by the full Commission. On appeal to circuit court the cause was reversed and remanded to the Commission with directions to determine whether appellee has a permanent partial disability and if so, the extent thereof.

Section 81-1318 (a) provides: "The right of compensation for disability under this act . . . shall be barred unless a claim therefor is filed within one [1] year after the time of injury, and the right to compensation for death shall be barred unless a claim therefor is filed within one year after the death, except that if payment of compensation has been made in any case on account of such injury or death a claim may be filed within one year after the date of the last payment. Every claim shall be filed with the Commission, and may be included in the notice of injury." This court has construed this subsection of the statute in at least two cases: *Sanderson & Porter* v. *Crow,* 214 Ark. 416, 216 S. W. 2d 796, and *Donaldson* v. *Calvert-McBride Printing Co.,* 217 Ark. 625, 232 S. W. 2d 651.

In the Sanderson & Porter case the claimant was injured in May, 1942, and signed a final settlement receipt in August, 1942. Claim for additional compensation filed in December, 1946, was held barred because not filed within one year after the date of the last compensation payment. In reaching this conclusion this court held that claimant's injuries were "recurrent" and not "latent," saying: "Even under the 'latent injury' cases, when the substantial character of the injury becomes known, then the claimant must file his claim within a specified period of time, or be barred thereafter by the statute of limitations." It was further held that even if the injuries were latent there was substantial evidence showing that they became patent two years before the filing of the claim so as to then commence the running of the one year statute of limitations.

In the Donaldson case we held that "the time of injury" from which the statute commences to run means the time when the disabling consequences of the accident or injury become apparent or discoverable, rather than the time of the happening of the accident from which the injury results. In short, we held that the time of injury meant the time when the injury becomes compensable. In applying this rule to the undisputed facts in the case at bar the circuit court held that appellee had filed his claim well within one year from the time he discovered, or could reasonably have discovered, that he suffered a permanent injury from the accident. We concur in this view.

It is clear from the undisputed facts that at the time appellee accepted the last payment for temporary disability he, acting in good faith, had every reason to believe that his arm would heal without permanent injury. This belief was based on the advice and opinion of a highly competent and reputable surgeon whose prognosis was given in the same good faith. The medical advice which appellee relied upon did not permit him, in good conscience, to file a claim until such time as the permanently disabling consequences of his injury became apparent or reasonably discoverable. A narrow and technical construction of the statute would require a claimant to file a claim for a disability which did not in fact exist and one that was not reasonably apparent or discoverable to the claimant. *Ogle* v. *Tennessee Eastman Corp.*, 185 Tenn. 527, 206 S. W. 2d 909; *Rosa* v. *George A. Fuller Co.*, 74 R. I. 215, 60 At. 2d 150. Under the undisputed facts, the permanent nature of appellee's disability and injury did not become apparent or discoverable until at least four months after the date of the last payment for temporary disability on April 28, 1948. Appellee's claim was filed within one year from that date, and the judgment is affirmed.

Justice WARD dissents.