**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY,
Petitioner,

v.

No. 96-2535

CHERYL L. COLE; DIRECTOR, OFFICE
OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(No. 95-1222)

Argued: June 5, 1997

Decided: August 12, 1997

Before HALL and MURNAGHAN, Circuit Judges, and
GARBIS, United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by unpublished opinion. Judge Murnaghan wrote the opin-
ion, in which Judge Hall and Judge Garbis joined.

_____

**COUNSEL**

**ARGUED:** Lawrence Philip Postol, SEYFARTH, SHAW, FAIR-
WEATHER & GERALDSON, Washington, D.C., for Petitioner.

Robert Elliott Walsh, RUTTER & MONTAGNA, L.L.P., Norfolk, Virginia, for Respondents. **ON BRIEF:** Matthew H. Kraft, RUTTER & MONTAGNA, L.L.P., Norfolk, Virginia, for Respondents.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

MURNAGHAN, Circuit Judge:

Newport News Shipbuilding & Dry Dock Co. appeals the Benefits Review Board's reversal of the Administrative Law Judge's decision who ruled in Newport News' favor concluding that its employee Cheryl Cole's application for disability benefits was time-barred. Newport News also appeals the ALJ's decision, on remand, to award Cole benefits contending that the ALJ did not require Cole to demonstrate that her inability to work was related to her disability.

I.

FACTS AND PROCEDURAL HISTORY

In August 1984, Cheryl Cole began working for Newport News in the machinery installation department. On August 5, 1985, while working at Newport News, Cole sustained a back injury when she slipped and fell while working on board the THEODORE ROOSE-VELT, a naval aircraft carrier. As a result of her fall, Cole reported to her supervisor, and thereafter, Newport News' medical clinic provided her with treatment.

On August 16, 1985, Dr. William F. Peach, Jr. examined Cole. At that time, Cole was diagnosed with having sustained a lumbosacral contusion and a contusion to the right lower leg. X-rays conducted revealed the presence of spondylolisthesis, a preexisting congenital

2

condition.[1] As a result of his examination, Dr. Peach admitted Cole to Riverside Hospital for further tests. Subsequently, on August 21, 1985, Dr. Peach discharged Cole with instructions to restrict her activities and that she could return to work in September.[2]

Cole returned to work on September 16, 1985.[3] When Cole returned to work, she met with Dr. John Bobbitt, a physician with Newport News. Dr. Bobbitt advised Cole that due to her congenital back problem she should be transferred to a department other than where she was originally assigned. As a result, she was placed in a light-duty position which required her to sit on a flushing rig watching gauges.

Despite the light-duty position, Cole continued to have back problems so the Newport News' clinic arranged for her to see an orthopedist, Dr. Kerry Nevins, for an evaluation. During Dr. Nevins' examination, conducted in October, 1985, he confirmed that Cole suffered from spondylolisthesis, a condition that made her more prone to suffer back problems. Nevertheless, Dr. Nevins opined that he "would anticipate that she with the passage of time would recover from her back strain problem." Dr. Nevins also advised Cole that her back strain could be alleviated through doing sit-ups and reducing her weight by 20 pounds. Dr. Nevins recommended that Cole be placed in a light work activity which involved limited bending, climbing, crawling and no strenuous lifting.

_____

[1] Spondylolisthesis is a condition in which the vertebra is composed of cartilage instead of bone as is normal. The condition also involves slippage in the alignment of the vertebra.

[2] In a letter, dated August 16, 1985, addressed to Dr. John Bobbitt, of the Newport News' medical clinic, Dr. Peach noted as follows:

> Although her neurological examination is normal, her x-rays show a subluxation at S-1 with a pars defect, so she has a congenital anomaly at L5-S12. I cannot determine, unless I can compare previous films, as to whether there is slippage at the time of this accident.

[3] Cole received temporary and total disability compensation from August 7, 1985 through September 15, 1985.

Subsequent to Dr. Nevins' examination, Cole returned to work in a light-duty capacity. On November 15, 1986, however, Newport News laid Cole off from her position.**4** At the time of the layoff, Newport News did not offer Cole another light-duty assignment. After her layoff, Cole did not file a claim for compensation benefits. In July, 1987, however, when her back and leg pain persisted, Cole sought treatment from Dr. Lawrence Morales, an orthopaedic surgeon. Dr. Morales confirmed the existence of spondylolysis **5** and expressed his opinion that Cole's condition stemmed from her back injury suffered in August 1985.

In so concluding, Dr. Morales testified in his deposition as follows:

Q: Doctor, do you have an opinion as to the relationship between Miss Cole's injury that she sustained at work as described to you, her spondylolysis, and her back symptoms or the pain that she was experiencing when she was seen in your office?

A: I see a number of this type problems, and she fits into one of those categories. That is a patient who has had a condition, that the condition was asymptomatic, it was congenital problem, she was able to perform all activities. A certain injury occurs which loosens up the vertebra. This remains in much the same way that causes the nerve to be irritated, and in some cases can be improved, but in this case has remained symptomatic and painful with evidence -- some evidence of nerve irritation.

Q: Were her symptoms or her problems that she was hav-

_____

**4** From October 8, 1986 through November 24, 1986, Cole was unable to work due to a personal medical condition unrelated to her employment. Cole was scheduled to return to work on November 24, 1986, but found she had been laid off.
**5** This condition is similar to spondylolisthesis, in that the vertebra is composed of cartilage instead of bone. Spondylolysis differs from spondylolisthesis in that no slippage of the alignment of the vertebra is involved in the former.

4

> ing at the time she was seen by you, then, a result of that injury of August 1985?
>
> A: In my opinion, yes sir.

Cole testified in her deposition that Dr. Morales' opinion conveying to her the causal connection between her August 1985 accident and her post-accident problems was the first time that she realized the connection between the two. Cole also testified that she presumed her back problems stemmed from the congenital nature of spondylolisthesis.

On February 8, 1988, Cole was recalled by Newport News to return to work.[6] Cole returned to work without any work restrictions upon the advice of Dr. John Bobbitt, a Newport News' physician, who told Cole to "try ... regular duty." Cole's back problems persisted and she left Newport News on February 29, 1988.

On July 31, 1987, Cole filed a claim under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq. ("Act") (1986 & Supp. 1997), seeking temporary total disability benefits from November 24, 1986 to April 12, 1987, and temporary partial disability benefits from April 13, 1987 through February 7, 1988. On April 3, 1989, after a hearing, the Administrative Law Judge (ALJ) issued a decision concluding that Cole's claims for benefits were not timely filed under § 13 of the Act. Cole appealed the ALJ's decision to the Benefits Review Board (BRB).

On appeal, the BRB reversed the ALJ's determination on the timeliness issue and concluded that Cole's claims for benefits were timely filed. On remand, on November 2, 1994, the ALJ concluded that Cole was entitled to the benefits she sought. Newport News appealed the

_____

[6] Subsequent to her layoff in 1986, Cole obtained a position as a night manager/cashier at Carrollton Tobacco, where she was working when Newport News recalled her back to work in July, 1987. Following her pre-employment physical, Dr. James Harmon, medical director for Newport News, notified Cole that she would not be recalled after all due to her underlying spondylolisthesis. Therefore, Cole remained at Carrollton Tobacco.

5

ALJ's decision to the BRB. No formal decision was issued by the BRB on Newport News' appeal. Rather, the ALJ's decision was affirmed as of September 12, 1996, by operation of Public Law 104-134. Newport News now appeals.

II.

DISCUSSION

Newport News raises two issues on appeal. First, Newport News contends that the ALJ's decision finding that Cole's claims for benefits was not timely filed was supported by substantial evidence, and the BRB erred in reversing the ALJ's determination. Second, Newport News argues that on remand the ALJ erred in awarding Cole benefits under the Act.

The court reviews the BRB's legal conclusions and whether the BRB adhered to its statutory standard of review of the ALJ's factual findings, de novo. Zapata-Haynie Corp. v. Barnard, 933 F.2d 256, 258 (4th Cir. 1981). The BRB's standard of review of the ALJ's factual findings requires the BRB to ascertain whether the ALJ's findings are rational, in accordance with the law, and supported by substantial evidence. Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459, 467 (1968); 33 U.S.C. § 921(b)(3). Substantial evidence requires "more than a scintilla but less than a preponderance" and is "such relevant evidence as a reasonable mind might accept to support a conclusion." Elliott v. Administrator, Animal & Plan Health Inspection Serv., 990 F.2d 140, 144 (4th Cir.) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)), cert. denied, 126 L.Ed.2d 149 (1993).

A. Timeliness of Cole's Claim under § 913[7] of the Act

Section 913 of the Act prescribes the time limitations for filing claims under the Act. That section provides:

_____

[7] Although the parties and the decisions by the ALJ and BRB refer to § 13 of the Act, § 913 is the new section number, and the language of § 13 and § 913 is the same. Hence, we refer to § 913 for purposes of clarity in this opinion.

6

Except as otherwise provided in this section, the right to compensation for disability or death under this chapter shall be barred unless a claim therefore is filed within one year after the injury or death. If payment of compensation has been made without an award on account of such injury or death, a claim may be filed within one year after the date of the last payment. Such a claim shall be filed with the deputy commissioner in the compensation district in which such injury or death occurred. The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment.

33 U.S.C. § 913 (1986). Thus, § 913 provides two timing events to trigger the running of the statute of limitations: (1) the date of the injury or death, or (2) the date of the last payment made to the employee or beneficiary without an award based on the injury or death.

In the instant case, the ALJ concluded that Cole's claim for benefits was barred under § 913. First, the ALJ found that Newport News had voluntarily paid to Cole temporary total disability compensation for the work days of September 24, 1985, November 20, 1985, and February 26, 1986, which Cole missed due to medical treatment for her back. Cole received her last payment from Newport News for these missed days of work on March 5, 1986.[8] Thus, pursuant to § 913 Cole was required to file her claim for benefits no later than March 5, 1987. The ALJ found that Cole's claim was filed with the Office of Worker's Compensation Programs (OWCP) on June 17, 1987, when her attorney contacted the Deputy Commissioner by letter.[9] Therefore, the ALJ found that Cole's claim was not timely filed.

_____

[8] Cole also received payments for the period from August 7, 1985 to September 15, 1985.
[9] The BRB noted that the letter was actually dated June 16, 1987, not June 17. For the purposes of the analysis, however, the significance of one day is not dispositive, as Cole's claim, on the theory assumed, was over 3 months late.

7

Turning to the second manner in which Cole could satisfy the timing restriction of § 913, the ALJ concentrated on the question of "when [Cole] knew or should have known her back problems were work-related."**10** First, the ALJ discredited Cole's testimony finding that her testimony with respect to when she became aware that her back problems were work-related "provides no certain basis on which to base a finding of when she became aware that her condition was work-related."**11** Second, he found that Cole knew or should have known that her August 5, 1985 injury would negatively impact her future earning capacity, as of September 16, 1985, when she saw Dr. Bobbitt, or at the very latest, by October 10, 1985, when she saw Dr. Nevins.

The ALJ found that Dr. Bobbitt's notes indicated that he had a long conversation with Cole when she returned to work, and that he advised the manager of labor relations that a transfer would be in the best interest of everyone given Cole's unstable lower congenital back. Although Dr. Bobbitt's notes did not indicate that he discussed with Cole the connection between her existing back problems and the August 5, 1985 accident, the ALJ stated "[i]t seems an obvious conclusion that Dr. Bobbitt discussed the effect that the strenuous duties required by the position she held before her fall would aggravate her congenital back problem."

_____

**10** Under the Act, injury is a term of art. Under the Act, an injury occurs when the person knows or should have known that his or her future earning power is impaired. See also Todd Shipyards Corp. v. Allan, 666 F.2d 399, 401-02 (9th Cir. 1992) ("[O]nce the man has been put on alert (i.e., once he knows or has reason to know) as to likely impairment of earning power, there is an `injury'; before that time, while there may have been an accident, there is as yet no `injury' for claim or filing purposes under this statute."); Stancil v. Massey, 436 F.2d 274, 277 (D.C. Cir. 1970).

**11** Essentially, Cole testified that she did not become aware until Dr. Morales examined her on July 31, 1987. As noted above, in his deposition, Dr. Morales testified that Cole's back problems were related to her August 5, 1985 accident. Furthermore, Dr. Morales recommended that Cole wear a back brace for 2-3 months. Dr. Morales also noted that he found it interesting that "the patient was completely asymptomatic prior to the August 4, 1985 injury and now has been symptomatic for approximately 2 years."

The ALJ then stated that even if Dr. Bobbitt's notes were "inconclusive" with respect to when Cole was put on notice that her future earnings capacity would be affected, the ALJ found that Cole was put on that notice by Dr. Nevins' October 10, 1985 medical report. While the ALJ acknowledged that Dr. Nevins stated in his report that Cole would recover from her back strain problem, the ALJ found more persuasive Dr. Nevins' statement that "[f]rom the standpoint of her work activity, I think on a long term basis if she is required to do strenuous work, she will develop progressively severe back problems. On the basis of her spondylolisthesis she is not suited, in my estimation, for heavy work activity and I would make the recommendation that she be reassigned into light work activity where she would have limited bending and limited climbing and crawling and not be required to do strenuous lifting." The ALJ found that based on the above, Cole should have been aware of "an impairment of earning power." Therefore, the ALJ found that Cole's claim for benefits filed on June 17, 1987, was not timely filed and denied Cole's claim for benefits.

On appeal, the BRB reversed. The BRB concluded that the ALJ erred in finding that Cole knew or should have known that she had a statutory injury on September 16, 1985, or at the latest October 10, 1985, thus triggering the one year statute of limitations period. The BRB stated that the ALJ's conclusions cannot "be upheld on the facts of this case."

In reversing the ALJ's findings, the BRB noted that Dr. Bobbitt did not indicate "that he informed [Cole] that the strenuous duties required by her position at the time of her injury would aggravate her congenital back problem." The BRB also concluded that the ALJ's finding with respect to the October 10, 1985 date could not be sustained. The BRB noted that Dr. Nevins told Cole that with the passage of time her back problems would improve. The BRB also noted that Dr. Nevins' notes of a later visit with Cole indicated that he told Cole that her being overweight was contributing to her back problems. The BRB stated that "[s]pecifically, the reports of Drs. Bobbitt and Nevins do not establish that [Cole's] injury was likely to permanently impair her earning capacity." Thus, the BRB concluded that substantial evidence did not support either of the ALJ's findings with respect to a trigger date for statute of limitations purposes.

9

The BRB then concluded that Cole did not become aware of her statutory injury until July 31, 1987, when she visited Dr. Morales. The BRB took recognition of Dr. Morales' notice that prior to the August 5, 1985 accident, Cole was asymptomatic, and since the accident Cole has been symptomatic experiencing back problems. Moreover, the BRB stated that Dr. Morales recommended that Cole wear a brace for 2-3 months, and commented that Cole might need a spinal fusion performed. Thus, the BRB concluded that "[i]n view of the fact that the possibility of a back brace and surgery was not discussed until July 31, 1987, we hold that [Cole] could not have been aware that her injury would likely impair her earning capacity until July 31, 1987, and that, therefore, her June 16, 1987 claim is timely."

In a nutshell, Newport News argues that the BRB exceeded its statutory standard of review. Specifically, Newport News contends the BRB disregarded the ALJ's findings which were supported by substantial evidence in violation of its statutory standard of review. Newport News' challenge should be rejected.

We note that a substantial difference exists between (a) adopting different facts from those found by the ALJ and (b) accepting his findings but finding them legally insufficient. Here it is the latter which the Benefits Review Board did.

In Newport News Shipbuilding & Dry Dock Co. v. Parker, 935 F.2d 20 (4th Cir. 1991), the court addressed the question of when the statute of limitations under § 13 [now§ 913] begins to run. In Parker, the plaintiff injured his right knee in a work-related accident in 1962. Parker continued to work and was treated intermittently for pain for his knee. Id. at 21. Finally, on July 6, 1987, the plaintiff received surgery on his knee. Id. at 22. The doctor who performed the surgery recommended a permanent work restriction of no climbing and limited walking and bending. Id. at 22. Prior to his surgery, the plaintiff did not miss any work as a result of his knee problems after recovering from the initial accident. Id. at 22. Following his surgery, in 1988, the plaintiff filed a claim for compensation seeking temporary total disability compensation for a seven-week period commencing from the date of the surgery through the plaintiff's return on August 24, 1987 to light work. Id.

10

At the hearing on the plaintiff's claim, the ALJ thought that the plaintiff's continual suffering of pain with respect to his knee should have alerted him that his injury was likely to affect his wage-earning capacity, despite the fact that the doctors who treated the plaintiff gave him favorable prognosis. Thus, the ALJ found that "on November 8, 1979, after at least six examinations and treatments . . . [the plaintiff] exercising reasonable diligence, should have known of the seriousness of his injury and the likelihood of loss of wage-earning capacity." Id. Therefore, the ALJ held that plaintiff's claim, filed in 1988, was time-barred. Id.

On appeal, the Benefits Review Board affirmed the ALJ's legal conclusion that the statute of limitations under § 13 [now § 913] of the Longshore and Harbor Workers' Compensation Act, does not begin to run "until the claimant knows or has reason to know of the likely impairment of his earning capacity." Id. The Benefits Review Board, however, reversed the ALJ's finding that the plaintiff should have known of his injury on November 8, 1979. Rather, the Benefits Review Board found that the statute of limitations did not begin to run until June, 1987, when the plaintiff's surgery was scheduled. Id. Thus, the Benefits Review Board reversed the ALJ's denial of benefits, and awarded temporary total disability benefits for the period requested by the plaintiff. Id.

On appeal to the Fourth Circuit, Parker affirmed the Benefits Review Board's decision. The court concluded that the Benefits Review Board did not err in its determination that "[the plaintiff's] time for filing his claim under § 13(a) did not commence until he knew or had reason to know that his 1962 injury was likely to impair his earning capacity." Id. at 27. As for the Benefits Review Board's finding that the plaintiff did not obtain such knowledge until June, 1987, the court stated that "the experiencing of pain after an accident is insufficient as a matter of law to establish an awareness of a likely impairment of earning power." Id. The court concluded that substantial evidence did not support the ALJ's finding, and held that "[c]onsequently, the Board did not exceed the scope of its review in reversing the ALJ's determination on the grounds that it was not supported by substantial evidence and concluding instead that [the plaintiff] did not have reason to know of the likely impairment of his

11

earning capacity until Dr. Nevins arranged surgery for him in 1987."
Id.

Based on Parker, we conclude that the BRB's decision here should be affirmed. First, the BRB did not exceed its statutory scope of review in reversing the ALJ's initial determination. No evidence exists in the record to support the ALJ's determination that Cole should have known that her future earning capacity would be affected as of October 1985 at the latest. As the BRB noted, neither Dr. Bobbitt nor Dr. Nevins explained to Cole the relationship between her injury sustained in August 1985 and her residual physical condition. Nor did either doctor explain to her that her condition was likely to impact her future earning capacity. Thus, the ALJ's determination was not based on substantial evidence, and the BRB did not err in finding that Cole did not know or have reason to know that her injury would affect her future earning capacity until her examination by Dr. Morales, in July, 1987.[12]

Thus, we affirm the BRB's decision.

B. ALJ's Award of Disability Benefits

Essentially, Newport News contends that the ALJ erred in awarding benefits to Cole because "he failed to even consider if there was a causal link between the disability (the layoff) and the work injury." Newport News maintains that Cole was laid off due to economic reasons, not due to her disability, and thus, is not entitled to benefits under the Act.

_____

[12] Newport News' attempt to distinguish the Parker decision is unpersuasive. Newport News claims that unlike the plaintiff in Parker, in the instant case, Cole was placed on work restrictions, was advised to change jobs, and had received compensation for her injury. The Parker case clearly holds that the statute of limitations does not begin to run until the claimant knows or has reason to know that the injury will likely affect future earning capacity. In the instant case, while all of Newport News' purported distinctions are in fact true, those distinctions still do not demonstrate that Cole knew or should have known of her injury. In fact, Cole continually was advised that her back problems stemmed from a congenital problem, not the 1985 accident.

12

The Act, much like Title VII, employs shifting burdens of proof. Initially, the claimant bears the burden of establishing a prima facie case of total disability demonstrating that claimant is unable to return to his or her prior employment "due to a work-related injury." Brooks v. Director, OWCP, 2 F.3d 64, 65 (4th Cir. 1993). If claimant establishes a prima facie case, the burden then shifts to the employer to demonstrate the availability of suitable, alternative employment. See, e.g., Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 542 (4th Cir. 1988). An employer may satisfy its burden by "showing a suitable job that the claimant actually performed after his injury." Brooks, 2 F.3d at 65 (citing with approval Darden v. Newport News Shipbuilding Dry Dock, Co., 18 BRBS 244, 246 (1986)).

In the instant case, as the ALJ recognized, the debate concerns whether Newport News has satisfied its burden of proving suitable alternate employment was available for Cole.[13] Before the ALJ, Newport News contended that suitable alternate employment was available and points to the light duty work performed by Cole from September 16, 1985 through November 16, 1986. Now, however, Newport News appears to challenge the ALJ's award of benefits to Cole on the grounds that Cole has not suffered a loss due to an injury, but rather due to her lack of seniority. Newport News argues that Cole would have been laid off regardless of her injury, so she is not entitled to benefits.

In any event, Newport News' argument misses the mark. Simply put, Newport News has failed to satisfy its burden. As explained above, the court is required to follow the shifting burdens of proof. Once claimant has established a prima facie case, the burden shifts to the employer. To date, Newport News has not offered any evidence demonstrating that Cole was offered an alternate position within its facility, or that suitable alternative employment existed in the open market for Cole. Newport News' reliance upon its past provision of light duty work to Cole, as satisfaction of its burden presently, must fail.

_____

[13] The parties do not dispute that Cole has established a prima facie case of temporary disability during the relevant periods. Cole has demonstrated that she was not capable of returning to her pre-August 1985, regular employment due to her work-related injury.

13

Newport News' attempt to rely upon two decisions, Brooks and Armfield v. Shell Offshore, Inc., 25 BRBS 303, 306-07 (1992), to support its argument that it has satisfied its burden of establishing suitable alternate employment by offering Cole the light duty work is equally unavailing. Cole's loss of that job for economic reasons, Newport News argues, does not negate its satisfaction of its burden. As the ALJ recognized, both of the cases upon which Newport News seeks to rely are inapposite. In each of those cases, work remained economically available for the claimant. Nevertheless, the actions of the claimant, not the employer, led to the loss of the employment. Thus, as the ALJ stated "[i]n the case at hand, [Cole] was not laid off as a result of her own actions; rather, [Newport News] eliminated her position entirely for economic reasons." Moreover, the ALJ stated "[Newport News] withdrew the opportunity for light duty work. That result was that suitable employment was no longer available in [Newport News'] facility."

The ALJ also relied upon Mendez v. National Steel and Shipbuilding Co., 21 BRBS 22, 1988 WL 232730 (1988), for support. In that case, the claimant lost his job due to an economic lay-off. Claimant's loss of his job had nothing to do with his injury or medical restrictions imposed as a result of those injuries. The claimant's employer attempted to rely upon the job from which the claimant had been laid off to satisfy its burden of demonstrating suitable alternate employment.

In affirming the ALJ, the Benefits Review Board acknowledged that an employer may rely upon a job within its own facility to meet its burden, but stated that "the job must be actually available to claimant." Id. at 22. The Benefits Review Board reasoned that since "the employer had withdrawn the opportunity for light day work with the result that suitable alternate employment in the employer's facility was no longer available" the employer could not meet its burden by relying on the job claimant lost due to an economic layoff.

Relying on Mendez, the ALJ held that "[w]ithout evidence of suitable jobs actually available to [Cole], either in the open market or in its own facility, [Newport News] cannot satisfy its burden. Thus, as the Board held in Mendez, by relying solely on a light-duty job in its own facility that was eliminated due to an economic layoff, [Newport

14

News] fails to prove that suitable alternate employment was actually available to [Cole]." Therefore, the ALJ concluded that Newport News had failed to carry its burden, and awarded Cole benefits.

Newport News has failed to offer any evidence, with the exception of Cole's light duty job which is no longer available due to an economic layoff at Newport News, to carry its burden that suitable alternate employment exists for Cole. Newport News' argument with respect to causation is putting the cart before the horse. Assuming that such a determination need be made, Newport News must still demonstrate a suitable alternate job exists, which in the instant case it has failed to do.

The BRB's decision is, in all respects,

AFFIRMED.

15